# IN THE COURT OF APPEALS OF IOWA

No. 20-0422
Filed June 3, 2020

IN THE INTEREST OF M.B. and N.B.,
Minor Children,

STATE OF IOWA,
Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Scott Strait, District Associate Judge.

The State appeals the juvenile court's denial of the petition to terminate the parental rights of the mother and father as to these two children. **AFFIRMED.**

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellant State.

Roberta J. Megel of State Public Defender's Office, Council Bluffs, for appellee father.

Annie M. Rohling, Council Bluffs, for appellee mother.

Daniel J. McGinn of McGinn, Springer & Noethe, PLC, Council Bluffs, guardian ad litem for minor children.

Considered by Doyle, P.J., Mullins, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**POTTERFIELD, Senior Judge.**

The State appeals[1] the juvenile court's denial of the petition to terminate the parental rights of the mother and father to N.B., born in 2016, and M.B., born in 2017.[2]  The State challenges the juvenile court's determination that DHS failed to make reasonable efforts to reunify these children with the mother and father and that termination is not in the children's best interests.

**I. Background Facts and Proceedings.**

The Iowa Department of Human Services (DHS) became involved with this family in June 2018, after the mother's oldest child, nine-year-old K.B., called 911 and reported the father[3] was assaulting the mother.  It was alleged the father strangled the mother and that, during the altercation, the mother hit a wall with enough force that her head broke through it.  All five of the mother's children were present at the time.  The father was arrested for domestic abuse assault by strangulation.  He later pled guilty to one count of child endangerment, and all other charges against him related to the incident were dismissed.

When DHS came to the home to make contact with the family a few days later, the worker learned the home had at least sixteen people living in it.  DHS expressed concerns about the cleanliness of the home and whether the children

---

[1] The guardian ad litem (GAL) also filed a notice of appeal, but our supreme court sua sponte dismissed the appeal after the GAL failed to timely file a petition on appeal.  *See* Iowa R. App. P. 6.201(1)(b), (3).

[2] The mother has five children.  The oldest three children share a father, and the two youngest, M.B. and N.B., share a different father.  The mother's three oldest children were also at issue in the same termination proceedings, and the mother's and their father's rights were terminated.  Neither the mother nor the father of the three oldest children have appealed that ruling.

[3] Any reference to "the father" in this opinion refers to the father of M.B. and N.B.

were receiving appropriate supervision. The mother was not cooperative regarding a possible safety plan and did not have anywhere to live with the five children. As a result, the children were removed from the parents' care, with the three oldest children being placed in relative care with their maternal aunt and uncle and the two youngest—M.B. and N.B.—placed in foster care.

At the outset, DHS's areas of concern were the father's use of illegal substances, the mother's low intellectual functioning and any resulting issues with parenting her five children, and the domestic violence in the parents' relationship and its effect on the children. The mother was ordered to complete a domestic violence class for victims, and the father was ordered to complete a domestic violence class for perpetrators. Additionally, the father was ordered to complete a substance-abuse evaluation and follow through with recommendations and the mother was ordered to complete IQ testing and a parenting assessment.

The mother and father both completed their respective domestic violence courses, and the mother completed a parenting class. The parents continued to have issues to address, but, by the end of February 2019, DHS felt the parents were doing well enough to warrant semi-supervised visits with M.B. and N.B. These visits continued until late June, when the previous social worker returned from leave and ended them.

About one month later, the State petitioned to terminate the parental rights of the mother and the father pursuant to Iowa Code section 232.116(1)(e) and (h) (2019).

Following a two-day termination hearing in December 2019, the juvenile court found the State failed to prove the grounds for termination pursuant to

paragraph (e),[4] noting that the mother was caring for N.B. and M.B. during unsupervised weekend overnight visits as recently as June 2019. Additionally, both children were bonded with their parents, and the parents maintained a place of importance in both children's lives. *See* Iowa Code § 232.116(1)(e)(3). As for paragraph (h),[5] the court concluded that the children could not be returned to the parents' care at the time of the termination hearing. *See id.* § 232.116(1)(h)(4). However, the court found "that both children are bonded with their parents and that

---

[4] Iowa Code section 232.116(1)(e) allows the court to terminate parental rights when:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

[5] Iowa Code section 232.116(1)(h) allows the court to terminate parental rights when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

given the progress of the parents with regard to these children, additional time should be afforded to work towards reunification." In reaching this decision, the court found that

> reasonable efforts have not been afforded [the father] or [the mother] as to [N.B.] or [M.B.] The mother progressed to unsupervised, weekend overnight care of [the children] and yet that contact was cancelled due to the failure of [the mother] to submit to random drug screens when [DHS] concedes that there was no evidence that [the mother] ever had a substance abuse problem. The court finds that the use of such a pretext for denial of contact wholly inappropriate. The untimeliness of [the mother's] parenting assessment and the follow-through with those recommendations are also concerning to this court. [The father] has also made substantial progress, including the completion of the [domestic violence] program. Domestic violence was the basis of the removal and the adjudication in this matter. Both parents have completed the necessary services to address those issues, and there has been no evidence of subsequent domestic violence or anger issues. [DHS's] position that [the father's] failure to complete a parenting assessment, psychological assessment or have IQ testing when such services were not ordered at disposition, review, or permanency hearings is also concerning. If it is the position of the []DHS that those services were critical to successful reunification, such services should have been a part of their dispositional case plan as required by Iowa Code sections 232.97 and 232.99 and should have been ordered by the court at disposition and subsequent hearings. Contrary to the position of the DHS, a review of the [child-in-need-of-assistance] file indicates that [the father] was never ordered to have a psychological evaluation.

The court denied the State's petition to terminate the mother's and father's rights as to N.B. and M.B.[6]

The State appeals.

---

[6] The mother's oldest three children, to whom her rights were terminated, remained in the care of their maternal aunt and uncle. According to testimony at the termination hearings, those relatives intended to adopt the children and the mother was supportive of this, as she believed she would be allowed to be part of the children's lives going forward.

**II. Discussion.**

The court denied the State's petition to terminate, finding the State failed to prove the elements of paragraphs (e) or (h). As to paragraph (e), the court found the parents had maintained a place of importance in the children's lives. *See id.* § 232.116(1)(e)(3). The court generally found the State proved the grounds for paragraph (h) but concluded the State had failed at its mandate to make reasonable efforts to reunify the family. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) ("[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the DHS to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts. The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." (citation omitted)).

On appeal, the State challenges only the court's reasonable-efforts and best-interests findings. We understand this to be an argument that we should find termination of the parents' rights appropriate under section 232.116(1)(h).

Upon our de novo review,[7] we agree with the juvenile court that the State failed to make reasonable efforts to reunify these children with the mother and father. The mother was parenting the children semi-supervised with up to three overnight visits per week for approximately four months—from the end of February until late June 2019.[8] The parents still had concerns to address during that time,

---

[7] *C.B.*, 611 N.W.2d at 492 ("We review termination proceedings de novo.").

[8] At the termination hearing, the social worker testified the father never had unsupervised or semi-supervised visits, but we believe this is in error. The parents were living separately at the time—as part of the terms of the father's probation—

but the reports from the service provider generally show the parents were meeting the children's needs and keeping them safe during the visits.

Then, in late June 2019, the family's social worker returned from leave, immediately ending the semi-supervised visits and telling the parents DHS would be filing for termination.[9] At the termination hearing, the social worker testified the semi-supervised visits were ended because the mother was failing to follow the safety plan, which included submitting to random drug screens, participating in therapy with the three oldest children, and visiting the three oldest children at the maternal aunt and uncle's home.[10]

Most of the service provider's reports during this time period indicate the mother was not asked to test for drugs. One report indicates the mother was asked to test and failed to show up. But, like the juvenile court, we question whether DHS actually ended the semi-supervised visits for this reason, as at the termination hearing, the social worker admitted the mother was "not . . . involved for substance

---

and the visits usually took place at the mother's home, but reports from the service provider during this four-month period show the father and mother were generally parenting together during these semi-supervised visits. The reports also show instances, and the father testified as to at least one time, when the father parented the children alone while the mother worked or attended an appointment.

[9] We acknowledge this took place nearly contemporaneously with the father's probation being revoked. However, the social worker did not rely on the probation revocation as the reason, which makes sense, since the revocation was based in part on the father's testing positive for marijuana—a test result DHS had been aware of for about a month when the semi-supervised visits were ended.

[10] According to the report filed by the service provider and offered into evidence by the State at the termination hearing, DHS ended semi-supervised visits with N.B. and M.B. and decided to petition for termination because the mother needed to submit the results of her IQ test to DHS, she needed to let her therapist know DHS needed therapy progress notes, the mother needed to submit to random drug tests, and both parents needed to participate in therapy with the three oldest children. The social worker's testimony left out the first two reasons and provided a new, additional rationale.

abuse, so [DHS] did not push" her to get a substance-abuse evaluation and that, to her knowledge, the mother had never had any issues with drugs or alcohol. And while DHS wanted the mother and father to attend therapy with the three oldest children to help understand and process those children's feelings regarding the violence they witnessed in the home, the service provider's reports indicate family therapy was "not an option right now due to [the oldest three children's] therapist feeling that it would not be beneficial to the children at this time." Finally, while we understand DHS's requirement that the mother visit the oldest three children as it pertains to the oldest three children, we question how it relates to her ability to parent the youngest two. Without a link between the failure to follow the case plan and possible danger to the children at issue, it appears DHS's decision to end the semi-supervised visits was punitive in nature. *See In re M.S.*, 889 N.W.2d 675, 681 (Iowa Ct. App. 2016) (noting failure to follow DHS's case plan alone is not sufficient reason for termination of a parent's rights; "Indeed, the termination of parental rights because of a parent's failure to follow the case plan, without a showing of harm, would run afoul of due process.").

Additionally, it was recognized early in the case that the mother has cognitive difficulties. As a result, she was ordered to complete IQ testing. The mother completed the testing in early January 2019 but then struggled to get the results delivered to DHS. It seems DHS did little to help her with this issue, in spite of the fact that the testing was ordered because of questions regarding the mother's ability to follow such instructions, complete necessary paperwork, etc. DHS needed the results from the IQ test in order for a parenting assessment to be completed. The parenting assessment, which identifies strengths and

weaknesses of the mother and provides recommendations for going forward, was not completed until mid-September 2019. And the social worker testified her communication with the mother dropped off in October through the termination hearing.

The parents have addressed many of DHS's concerns. The family has a safe, two-bedroom home, which is appropriate for the parents and two youngest children. The father is employed, working two jobs and more than full-time hours, while the mother is receiving social security disability. Both parents completed the domestic violence classes they were ordered to complete. The social worker questioned whether the parents have taken the lessons from their respective courses to heart, but she admitted there has been no evidence of domestic violence in the home since DHS became involved in June 2018. Reports from the three oldest children's therapist suggest that the incident that caused DHS to get involved was not the only incident of domestic violence in this family—as the parents maintain it is—but there are still no allegations that domestic violence has been an issue since DHS became involved.

At the termination hearing, DHS faulted the father's failure to complete IQ testing or his own parenting assessment. As the juvenile court did, we note this was ordered only one time—at the beginning of the case—and never brought up again until the termination proceedings. Additionally, in its petition on appeal, the State focuses on the father's failure to complete substance-abuse treatment, but the social worker testified at the termination hearing that she did not then have any concerns regarding the father's use of alcohol or drugs. As for concerns regarding

the parents' mental health, additional time and services will give the parents time to continue addressing this issue.

Because we agree with the juvenile court that the State failed to make reasonable efforts to reunify N.B and M.B. with the mother and father, we affirm the denial of the State's petition to terminate the parents' rights. As the State failed to prove the statutory grounds for termination, we do not consider whether termination is in the children's best interests. *See, e.g.*, *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (providing that termination of parental rights is a three-step process, and *if* a statutory ground for termination is established under section 232.116(1), *then* we consider whether termination is in the children's best interests under section 232.116(2)).

**AFFIRMED.**